**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Hartford Fire Ins. Co.,** *et al.*, | ) | **CASE NO. 1: 11 CV 1137** |
| | ) | |
| Plaintiffs, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **Flagstaff Industries, Corp.,** *et al*., | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

Plaintiffs Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively "Hartford") seek a declaratory judgment in this case relating to Hartford's obligations under insurance policies issued by Hartford to Defendant Flagstaff Industries Corp. ("Flagstaff"). Hartford and the individual defendants named in this case (*i.e.*, Defendants Phillip Dubsky, Marvin Speer, Charles Harper, Jang Kongthong, Sonia Tanio, David Rose, and Juan Norberto) have filed cross motions for judgment on the pleadings, agreeing that whether coverage exists under the policies at issue is a matter to be determined by the Court on the basis of the pleadings. Pending are: Plaintiffs' Motion for Judgment on the Pleadings (Doc. 28) and Defendants' Motion for Judgment on the Pleadings (Doc. 33).

1

Also pending is Plaintiffs' Motion for Default Judgment against Defendant Flagstaff Industries, Corp. (Flagstaff) (Doc. 32.) This motion is unopposed. For the reasons stated below, plaintiffs' motion for judgment on the pleadings is granted, defendants' motion for judgment on the pleadings is denied, and plaintiffs' motion for a default judgment against Flagstaff is granted.

**Facts**

The following facts pertinent to the pending motions are derived from the pleadings. In 2005, Defendants and Ohio residents Dubsky, Speer, Harper, Kongthong, Tanio, Rose, and Noberto (collectively, "claimants" or "TCPA claimants") brought a class action lawsuit against Flagstaff, a Pennsylvania corporation, in Ohio state court under the Telephone Consumer Protection Act (TCPA) ("the underlying action"). The underlying action alleged that Flagstaff violated the TCPA and the Ohio Consumer Sales Practices Act (CSPA) by sending the TCPA claimants and similarly situated class members unsolicited facsimile advertisements. Specifically, the First Amended Complaint in the underlying action alleged that between 2001 and 2003, Flagstaff violated the TCPA and CSPA by willfully transmitting a total of 20 unauthorized and unsolicited fax advertisements to the individual TCPA claimants. Each claimant received one unauthorized or unsolicited fax advertisement, except claimant Harper, who allegedly received two unauthorized or unsolicited faxes, and claimant Tanio, who allegedly received twelve. (*See* State Court Am. Complt. ¶¶ 7-15.) The TCPA claimants alleged five claims for relief against Flagstaff based on Flagstaff's unsolicited fax transmissions: (1) violation of the TCPA under 47 U.S.C. § 227(a)(4) and 47 U.S.C. § 227(b)(1)(C) for willfully sending unsolicited advertisements by fax; (2) violation of the

2

CSPA under Ohio Rev. Code §§ 1345.02(A) and 1345.09 for sending faxed advertisements without prior express invitation or permission; (3) violation of the TCPA under 47 C.R.F. § 68.318(d) for willfully sending faxed advertisements that did not include the date and time of the fax; (4) violation of the CSPA under Ohio Rev. Code §§ 1345.02(A) and 1345.09 for knowingly failing to identify the sender of the fax; and (5) a claim setting forth class action allegations. The claimants sought statutory and treble damages under the TCPA and the CSPA. The claimants alleged that Flagstaff's transmission of the unsolicited faxes constituted an unlawful taking of the claimants' "fax paper, toner ink and electricity, as well as an unauthorized use of [claimants'] fax machines" and constituted "acts of conversion, property damage and violation of the privacy rights of the [claimants]." (*Id*. at ¶ 22.)

Although properly served, Flagstaff did not answer or appear in the underlying action. On May 10, 2006, the state court conducted a default hearing and entered judgment against Flagstaff. The state court also granted class certification and awarded damages against Flagstaff totaling $1,070,000.00, and attorneys' fees totaling $350,000.00. (Doc. 1., Ex. 2, pp. 9-10.)

On or about June 11, 2009, claimants' counsel sent a letter to Hartford, demanding that Hartford pay all portions of the judgment entered against Flagstaff pursuant to policies of insurance that Hartford issued to Flagstaff. (Complt., ¶ 10.) Specifically, the letter stated that the unsolicited faxes sent by Flagstaff were a violation of the claimants' "right of privacy" and that coverage existed under the policies' coverage provisions pertaining to "advertising injury." (*Id*.) Hartford declined coverage under the policies and filed this declaratory judgment action against Flagstaff and the individual TCPA class claimants on the basis of

3

diversity, seeking a declaration as to "the respective rights and obligations of the parties under the [policies]." (*Id.*, at ¶ 14.)

*The Hartford Policies*

At times pertinent to the underlying litigation, Hartford insured Flagstaff under certain liability insurance policies; specifically, various renewals of a:  (1) Special Multi-Flex Policy No. 13 UUN IC7500 (the "Primary Policies"); and (2) Umbrella Liability Policy NO. 13 XHU IC7311 (the "Umbrella Policies").  (Pltfs Am. Ans. to Def. Cterclaim, Doc. 24, ¶ 4, Exs. 1-6.)

Each of the Primary Policies includes a Commercial General Liability ("CGL") Coverage Form that provides two types of liability insurance coverage:  (1) Coverage A, which provides "Bodily Injury and Property Damage Liability" insurance coverage; and (2) Coverage B, which provides "Personal and Advertising Injury Liability" insurance coverage. (Doc. 24, Exs. 1-6.)

The Insuring Agreement under Coverage A in the Primary Policies provides that Hartford will pay those sums that Flagstaff becomes legally obligated to pay "because of . . . 'property damage' . . . caused by an 'occurrence'" provided that the property damage occurs during the policy period.  (Doc. 24, Exs. 1-6, Bates Nos. HF 127, HF 371, HF 587.)  The Primary Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Doc. 24, Exs. 1-6, Bates Nos. HF 138, HF 382, HF 601.)

The Insuring Agreement under Coverage B in the Primary Policies provides that Hartford will pay those sums that Flagstaff becomes legally obligated to pay as damages

"because of 'personal and advertising injury.'"  "Personal and advertising injury" is defined as injury arising out of one or more of certain enumerated offenses, including oral, written, or electronic "publication of material that violates a person's right of privacy."  (Doc. 24, Exs. 1-6, Bates Nos. HF 143, HF 387, HF 601.)

The insuring agreements under the Umbrella Policies contain substantially similar language to the language in the insuring agreements in the Primary Policies.  (Doc. 24, Exs. 1-6, Bates Nos. HF 179-HF 194, HF 429-HF 444, HF 642-HF 653.)

In addition to the provisions set forth above, the Primary Policies and Umbrella Policies contain various exclusions.  Coverage A includes, among other provisions, an exclusion barring coverage for "'property damage' expected or intended from the standpoint of the insured.'"  (Doc. 24, Exs. 1-6, HF 145, HF 389, HF 588).  Coverage B includes, among other provisions, an exclusion barring coverage for "'personal and advertising injury' . . .[c]aused by an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury.'"  (Doc. 24, Exs. 1-6, HF 142, HF 386-HF 387, HF 591.)

All defendants have been properly served in the case, but Flagstaff has failed to appear or answer as required by the federal rules.  Thus, on January 31, 2012, the clerk certified Flagstaff's default as required by Fed. R. Civ. P. 55(a).  (*See* Doc. 31.)

Hartford and the TCPA claimants each contend they are entitled to judgment on the pleadings in their favor on the issue of insurance coverage.  Hartford contends the policies it issued to Flagstaff do not provide coverage with respect to the TCPA claims asserted in the underlying action.  The class claimants contend that coverage exists.

5

**Standard of Review**

The standard of review for a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same standard applicable to motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757, 761 (6th Cir. 2006). A motion for judgment on the pleadings is appropriately granted when the movant establishes that there is no material issue of fact to be resolved and that he is entitled to judgment as a matter of law. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). In determining a motion for judgment on the pleadings, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded allegations as true. *Vickers,* 453 F.3d at 761. However, the court is not required to accept legal conclusions or unwarranted factual inferences. *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007). In determining the motion, the court may consider any of the pleadings, including the complaint, the answer, and any written instruments attached to them. 2 Moore's Federal Practice – Civil § 12.38 (2012).

**Discussion**

Hartford contends it is entitled to a declaratory judgment that Flagstaff is not entitled to coverage under the policies as a matter of law because the TCPA claims do not fall within any of the policies' insuring agreements. As a preliminary matter, Hartford argues that the policies are to be interpreted under Pennsylvania law because the policies do not contain express choice of law provisions, and Pennsylvania has the most significant relationship with the policies.[1] Hartford asserts the pleadings show that Pennsylvania has the most significant

---

[1] Where a conflict of law exists in contract cases, Ohio courts apply the law of the

relationship with the policies under the factors set forth in Section 188 of the Restatement of Law on Conflicts. Specifically, Hartford asserts the pleadings show: (1) Flagstaff is a Pennsylvania corporation; (2) the policies were issued to Flagstaff's offices in Pennsylvania through a New Jersey broker; (3) the policies insure five Flagstaff locations in Pennsylvania, three in Massachusetts, and one in New Jersey; and (4) the policies contain numerous endorsements and notices specific to Pennsylvania. (Hartford Mem. at 8.) By contrast, Hartford asserts that Ohio has no relationship with the policies.

Hartford argues that, under Pennsylvania law, the TCPA claims against Flagstaff are not covered under the policies. First, Hartford contends the claims do not fall within the "property damage" coverage provision (coverage A) of the policies because the policies provide such coverage only when caused by an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Hartford argues that the claimants do not and cannot claim property damage caused by an occurrence in this case because they repeatedly alleged in their complaint in the underlying action (in order to establish their entitlement to recover treble and statutory damages under the TCPA) that Flagstaff's fax transmissions were "willful and deliberate."

---

state with the most significant relationship with the contract as determined by the Restatement of the Law (Second), Conflict of Laws (1971). *See Gries Sports Enterprises, Inc. v. Modell*, 15 Ohio St.3d 284, 287 (1984). In the absence of a choice of law provision, Section 188 of the Restatement sets forth the following factors to be considered in determining which state has the most significant relationship with the contract: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id*.

(Hartford Mem. at 11.) Thus, the fax transmissions were not caused by "an accident" as required for coverage. Furthermore, Hartford argues that even if Flagstaff's conduct in sending claimants' fax transmissions could be said to fall within the property damage coverage provisions, Flagstaff's conduct is excluded from coverage because it is property damage "expected or intended from the standpoint of the insured."

Hartford cites authority supporting its position that an insured's conduct in sending unwanted fax transmissions in violation of the TCPA does not constitute "property damage" under similar insurance coverage provisions. (*See* Hartford Mem. at 10.) For example, in *Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co.*, 432 F. Supp. 2d 488 (E.D. Pa. 2006), the court held that a TCPA class action complaint did not allege "property damage" within the meaning of an insured's commercial general liability policy's property damage coverage provision because the allegations in the TCPA complaint did not characterize an accidental occurrence. Rather, the insured "knew that its actions would cause the very harm the TCPA aims to prevent." *Id*. at 510. The court held the TCPA class action complaint was outside of the scope of the property damage coverage provision and, further, was excluded under an exclusion (similar to the exclusion in Hartford's policies) precluding coverage for "expected or intended" property damage. *See also Maryland Casualty Co. v. Express Products, Inc.,* Nos. 09-857/08-2909, 2011 WL 4402275, at * 10 (E.D. Pa. Sept. 22, 2011) ("[T]he Court finds that Defendant does not fall within the 'property damage' coverage provision and, even if it could be found that the 'property damage' provision applied in this instance, Defendant would still be excluded from coverage by the 'expected and intended injury' exclusion."); *Advent Home Mortgage Corp. v. Hartford Cas. Ins.*, No. 06-1582, 2006 U.S. Dist. LEXIS

64631, at *9 (E.D. Pa. Aug. 14, 2006) (Hartford's business liability policy does not provide coverage for a violation of the TCPA under the policy's "property damage" coverage provision).

The *Express Products* court set forth the following explanation as to why the sending of unsolicited fax transmissions fell within an exclusion for "expected or intended" property damage:

> Defendant intended to send facsimile advertisements to the putative class members.  Further, the Court finds without question that Defendant knew that sending facsimile advertisements would result in the use of the underlying plaintiffs' fax, toner, paper and ink.  While Defendant may not have desired to produce those results, Defendant certainly acted knowing those consequences were substantially certain to result. . . . This conduct was clearly intentional and the consequences thereof were natural and expected.

*Express Products*, 2011 WL 4402275, at * 15.  Hartford contends these cases demonstrate that the TCPA claims in this case do not fall within Hartford's policies' "property damage" coverage provisions.

In addition, Hartford argues the TCPA claims also do not fall within the policies' "personal and advertising injury" coverage provisions (coverage B) because the Pennsylvania courts have "uniformly ruled that violations of the TCPA do not constitute a publication of material that violates a person's right of privacy."  (Hartford Mem. at 11.)  On this point, Hartford cites cases holding that the "right of privacy" covered by similar advertising injury insurance coverage provisions is the privacy interest in "secrecy, not seclusion." *Melrose*, 432 F.Supp. 2d at 502.  Thus, the cases held that alleged violations of the TCPA – which do not complain about the content of the unauthorized faxes but instead complain only about the sender's taking of fax paper, toner ink, and electricity from the recipient –  do not fall within

9

the scope of "advertising injury."  For example, the *Melrose* court held:

> The . . . Complaint does not raise any issues regarding the content of the faxes sent, instead focusing on the depleted resources that resulted from the unauthorized faxes.  Although the . . . Complaint contains a claim under the TCPA, that statute addresses the privacy interest in being left alone, which is not the privacy interest addressed in the Policy.  Accordingly, the "advertising injury" provision does not cover the sending of unsolicited faxes because [such] actions do not fall within the scope of the Policy's coverage for invasions of privacy.

*Id*.  The district court reached a similar conclusion in *Express Products*, ruling:  "[T]he underlying complaint . . . alleged that the unsolicited faxes imposed costs without authorization of the class members, and the underlying action similarly complained about the monetary costs caused by the deletion of class members' resources, not about the content of any of the faxes.  Accordingly, . . . this Court concludes that Defendant did not fall within the advertising coverage provisions."  2011 WL 4402275, at * 17.

The court in *Advent Home Mortgage Corp.* considered whether a TCPA class action fell within a provision identical to the advertising injury provision on which the TCPA claimants in this case rely (*i.e.*, a personal and advertising injury insurance provision defining personal and advertising injury to include an injury arising out of an "oral, written or electronic publication of material that violates a person's right of privacy").  The court held that this provision related only to "the secrecy aspect rather than [the] seclusion aspect of privacy"; thus, TCPA class action claims not related to the content of unauthorized faxed transmissions were not covered.  2006 U.S. Dist. LEXIS 64631, at *14.

Finally, Hartford relies on *Telecommunications Network Design v. Brethren Mut. Ins. Co.*, 5 A.3d 331, 336 (Pa. Super. 2010), in which a Pennsylvania state court construed Pennsylvania law to hold that TCPA violations not related to their content do not constitute a

10

"publication of material which violates a person's right of privacy" so as to trigger advertising injury insurance coverage.  The *Brethren* court stated:

> This is an issue of first impression for Pennsylvania.  However, numerous state and federal courts have considered whether violations of the TCPA are covered by insurance policies that include similar or identical language to that at issue in the instant matter.  Some courts have ruled in favor of coverage and others have ruled against coverage. . . .  After a review of these cases, this Court is persuaded by the decision of the United States District Court for the Eastern District of Pennsylvania in *Melrose Hotel Company v. St. Paul Fire and Marine Ins. Co.*, 432 F. Supp.2d 488 (E.D. Pa. 2006), which applied Pennsylvania policy interpretation rules to an insurance policy containing a nearly identical clause to that in the instant matter and concluded that there was no duty to defend. . . .
>
> After reviewing the relevant portions of the policies, we agree with the trial court that the "advertising injury" clause is clear and unambiguous and that Paradise's actions are not covered by that provision of the policy. . . .
>
> The underlying action did not complain about the content of the faxes but focused on the monetary costs caused by the depletion of class member's resources that resulted from the unauthorized faxes.  While the complaint contains a TCPA claim, it addresses the privacy interests that arise from one's right to be left alone.  This is not the privacy interest addressed and covered by the "advertising injury" clause of the policies [which is confined to secrecy interests].  The trial court did not err in holding that Appellee did not have a duty to defend under the "advertising injury" clause of the policies.

*Brethren*, 5 A.3d at 335-337.

Hartford contends these cases establish that coverage does not exist for the TCPA violations at issue here.  Because the TCPA complaint in the underlying action did not complain about the content of any of the unsolicited faxes sent by Falstaff, but complained only that the faxes utilized the claimants' fax paper, toner ink, electricity, and fax machines, Hartford contends the claims are not covered under the personal and advertising injury coverage provision covering injuries arising from oral, written or electronic "publication of

11

material that violates a person's right of privacy."[2]

      The class claimants oppose Hartford's motion for judgment on the pleadings and assert that they are entitled to a judgment on the pleadings in their favor that Hartford is legally obligated to pay the judgment rendered against Flagstaff in the underlying litigation. Although claimants do not dispute Hartford's assertions that Pennsylvania has the most significant relationship with the policies, they argue that the Court should apply Ohio, not Pennsylvania, law to interpret the policies because "there has been no ruling by . . . either the Ohio Supreme Court or the Pennsylvania Supreme Court in regard to the issue of insurance coverage for TCPA 'junk fax' claims."  Therefore, claimants argue, no "actual" conflict exists between the controlling law of Pennsylvania and Ohio such that a conflict of laws analysis applies.  (Claimants' Mem. at 12.)  While Hartford does not dispute (and agrees with the claimants) that there must be an actual conflict of law before a conflict of law analysis under Section 188 of the Restatement of the Law of Conflicts is applied, Hartford persuasively points out in its reply brief that conflicting rulings by different states' *highest* courts are not required for a conflict to exist.  Rather, Section 188 of the Restatement provides that the "rights and duties of the parties with respect to an issue are determined by the local law of the state."  The Restatement provides that local law is "the body of standards, principles and rules . . . which the courts of that state apply in controversies brought before them."  (*See* Hartford Rep. to Def. Mem. in Opp. at 4, citing § 4 of the Restatement.)  As set out above, Hartford has

---

[2]

      Further, Hartford argues, even if there were coverage under the personal and advertising injury provision, coverage would be barred under the exclusion of personal and advertising injury "[c]aused by an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury.'"

cited pertinent precedent from state and federal courts applying Pennsylvania law and holding that TCPA claims are not covered under "advertising injury" or "property damage" insurance coverage provisions. This state and federal court precedent constitutes the local law of Pennsylvania and can be said to conflict with the local law of Ohio in that the claimants take the position in this case that (contrary to the holdings of the cases relied upon by Hartford applying Pennsylvania law) unsolicited fax transmissions are properly construed under Ohio law as falling within the scope of Hartford's policies' coverage provisions. (S*ee, e.g.* Claimants' Opp. to Hartford's Mot. at 17, 24.) Therefore, the Restatement factors are appropriately applied to determine what state law to apply, and there is no dispute that the Restatement factors weigh in favor of applying Pennsylvania law. (*See* Hartford Mem. at 8.)

Moreover, Hartford's cases applying Pennsylvania law are persuasive to show that the TCPA claims at issue are not covered under Hartford's policies. As *Melrose, Advent, Brethren,* and *Express Products* all teach, TCPA claims that do not complain about the content of unsolicited fax transmissions do not fall within the meaning of advertising injury insurance coverage provisions affording coverage for injuries arising out of publications violating a person's "right of privacy." In that the TCPA claimants did not complain about the content of the unauthorized fax transmissions in the underlying action but instead complained only that the faxes unlawfully utilized their fax paper, toner ink, electricity, and fax machines, the TCPA claimants' claims do not characterize an injury arising from a publication of material violating their right of privacy. The courts applying Pennsylvania law have held that such rights to "privacy" pertain only to one's privacy interest in secrecy, not seclusion and do not cover TCPA claims unrelated to the content of the faxes.

In addition, *Melrose*, *Advent*, and *Express Products* are persuasive to show that the TCPA claims are not covered under the Hartford policies' "property damage" coverage provisions.  First, Hartford's argument is persuasive that the TCPA claims do not constitute property damage caused by an accidental "occurrence" because the claimants repeatedly alleged in their complaint in the underlying action that Flagstaff's conduct was willful and knowing (in order for the claimants to recover treble statutory damages under the TCPA). These allegations, which supported the judgment entered in the underlying action, foreclose a claim here that the faxes constitute property damage caused by an accidental occurrence.  Second, even if there were covered property damage, Hartford's argument is also persuasive that coverage for such damage would be excluded on the basis that it was "expected or intended from the standpoint of the insured."

In sum, Hartford's arguments are persuasive that Pennsylvania law applies to the policies and there is no coverage under the policies as a matter of Pennsylvania law. Accordingly, Hartford's motion for judgment on the pleadings is granted, and the motion of the TCPA claimants for judgment on the pleadings is denied.

*Hartford's Motion for Default Judgment as Against Flagstaff*

This leaves Hartford's Motion for Default Judgment against Flagstaff pursuant to Fed. R. Civ. P. 55(b).  Hartford argues that since Flagstaff has not responded to Hartford's complaint for declaratory judgment and is in default as certified by the Clerk of Court, Flagstaff has "implicitly" admitted all of the facts set forth in the pleadings, including the provisions of Hartford's policies as interpreted under Pennsylvania law, and Hartford is entitled to a declaratory judgment that its policies do not provide coverage for the claims and

judgment of the TCPA claimants in the underlying action.

Flagstaff has not appeared in the case or opposed Hartford's motion for a default judgment.  Accordingly, Hartford's motion for a default judgment against Flagstaff is granted.  For the reasons discussed above in connection with Hartford's and the TCPA claimants' motions for cross motions for judgment on the pleadings, Hartford's policies do not provide coverage for the TCPA claims.

**Conclusion**

For all the reasons stated above, plaintiffs' motion for judgment on the pleadings is granted, plaintiffs' motion for a default judgment against Flagstaff is granted, and defendants' motion for judgment on the pleadings is denied.  The Court hereby declares that Hartford's policies do not provide coverage for the asserted TCPA claims.

IT IS SO ORDERED.


      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 5/10/12